# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JARED DROZE, and<br>MATTHEW REYNA,<br><br>    Plaintiffs,<br><br>ALLIANCE HEALTH SOUTHWEST<br>OKLAHOMA, LLC; MANGUM CITY<br>HOSPITAL AUTHORITY d/b/a MANGUM<br>REGIONAL MEDICAL CENTER; and<br>QUARTZ MTN INVESTMENT, LLC,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. CIV-19-175-D<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED JOINT STATUS REPORT AND DISCOVERY PLAN

Date of Conference:  Thursday, September 5, 2019 at 11:00 a.m. before Honorable Judge Timothy D. DeGiusti

Appearing for Plaintiff:  Amber L. Hurst, OBA # 21231
Hammons, Hurst & Associates
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: amber@hammonslaw.com

Appearing for Defendants:  Rodney C. Ramsey, OBA #10450
Ramsey and Gray, P.C.
101 N. Robinson Avenue, Suite 725
Oklahoma City, OK 73102
(405) 239-2393
rramsey@ramseygraypc.com
*Attorney for Defendant Mangum Regional Medical Center*

Adam W. Childers, OBA #18673
Mary P. Snyder, OBA #31427
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)

1

>adam.childers@crowedunlevy.com
>mary.snyder@crowedunlevy.com
>*Attorneys for Defendants Alliance Health Southwest Oklahoma, LLC and Quartz Mountain Investments, LLC*

**Jury Trial Demanded ■ - Non-Jury Trial □**

1. **BRIEF PRELIMINARY STATEMENT.** State <u>briefly</u> and in ordinary language the facts and positions of the parties to inform the judge of the general nature of the case.

    A. **Plaintiff:** Plaintiffs' actions are for breach of contract; failure to pay minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 203, *et seq*; and failure to pay wages including severance wages, agreed upon wages, and minimum wages, in violation of Oklahoma's Protection of Labor Act, 40 Okla. St. §§ 161.5, *et seq*.

    B. **Defendants Alliance Health Southwest Oklahoma LLC ("Alliance Health") and Quartz Mountain Investments LLC ("Quartz Mountain"):** Defendants deny that they were the employer of Droze or Reyna. Instead, all parties understood from the beginning of Droze and Reyna's employment that they were being hired by to work for the Defendant Mangum Regional Medical Center ("the Hospital"). The Hospital confirmed this by paying them as part of regular payroll until the Hospital terminated Alliance Health's services, at which time the Hospital first claimed that Droze and Reyna did not work for it. Defendants have counterclaimed against the Hospital for indemnity based on damages associated with the Hospital's refusal to pay Droze and Reyna.

    C. **Defendant Mangum City Hospital Authority:** Mangum City Hospital Authority ("Mangum") denies that it is an employer or ever was an employer of either of the Defendants herein. Mangum further denies that it ever terminated the employment of either of the Plaintiffs. Mangum contends that pursuant to a management agreement that it entered into with the Co-Defendant Alliance Health Southwest Oklahoma, LLC ("Alliance") that both of the Plaintiffs herein were an employee of that entity and/or Quartz Mountain Investments, LLC. Mangum seeks indemnification against both Co-Defendants.

2. **JURISDICTION.** The Court has jurisdiction over the federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**3.** **<u>STIPULATED FACTS</u>.** List stipulations as to all facts that are not disputed, including jurisdictional facts.

1. This Court has jurisdiction over the parties and subject matter.
2. Venue is proper in this district.
3. All parties have been correctly designated.
4. There are no questions as to misjoinder and non-joinder of parties.

**4.** **<u>CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF SOUGHT</u>.**

   **A.** **<u>Plaintiff</u>:**

   1. Plaintiffs Droze and Reyna began employment with Defendants around August 6, 2018 and August 13, 2018, respectively. Plaintiff plaintiffs worked under the title of Associate Hospital Administrator.

   2. Both Plaintiffs entered into written contracts which provided in relevant part:

      A. Para. 16, providing that the Plaintiffs could only be terminated by a majority vote of the entire board of Defendant Alliance;

      B. Para. 16, providing that upon termination, the terminated Plaintiff would continue to receive their "monthly base salary for the month in which his duties were terminated and for 3 consecutive months thereafter as an agreed upon severance payment".

      C. Para. 18: In the event the "Hospital is merged, sold, or closed, the [Plaintiffs] may . . . terminate [the] agreement or be retained as administrator of the Hospital, or any successor corporation to or holding company of the Hospital. If the [Plaintiff] elects to terminate his employment at such time, he shall be entitled to the same severance arrangement as would be applicable under Paragraph 16 if the Hospital had terminated employment at such time".

   3. Both Plaintiffs were involuntarily terminated around December 11, 2019. The stated reason for the termination was that the "contract with Alliance Health had been cancelled".

   4. During approximately the last two weeks of the Plaintiffs' employment, each Plaintiff worked approximately forty (40) hours each week, but were not paid at all for any of the hours they worked.

   5. Defendants did not pay Plaintiffs for any hours they worked during the last two weeks of their employment. These unpaid wages include minimum

3

   wages and the full wages agreed upon as set out in the employment contracts.

6. The Defendants' practice was to pay terminated employees the cash value of the paid time off (PTO) they accrued, but had not used, during their employment.

7. Plaintiffs each earned approximately forty (40) hours of paid time off, but Defendants have refused to pay the cash value of this PTO.

8. The Defendants breached Plaintiffs' employment contract including, but not limited to, by refusing to allow Plaintiffs the option of being retained as an administrator of the hospital.

9. Defendants breached Plaintiffs' employment contracts including, but not limited to, by refusing to pay the severance to which they are owed.

10. As a direct result of the Defendants' conduct, the Plaintiffs have suffered (and continue to suffer) wage loss, including back, present and front pay, along with the value of benefits associated with such wages.

B. **Defendants Alliance Health Southwest Oklahoma and Quartz Mountain Investments LLC:**

1. The Plaintiffs were employed solely by the Hospital.

2. The Hospital and Alliance Health entered into a Management Agreement dated July 25, 2017.  Under the terms of the Management Agreement, the Hospital engaged Alliance Health to manage the Hospital that the City of Mangum owned and operated.

3. Under the terms of the Management Agreement, the Hospital was required to employ or lease all non-executive personnel, while Alliance Health was required to employ or lease all executive personnel.  The only position that was described as "executive" pursuant to the Management Agreement was the position of chief executive officer.

4. The job of Associate Hospital Administrator is not an executive position within a hospital.  Therefore, the terms of the Management Agreement relating to non-executive personnel controlled in regard to the employment of Plaintiffs Droze and Reyna.

5. The Hospital's course of conduct before and after Plaintiffs Droze and Reyna were hired shows that the Hospital viewed them as its employees until the Hospital terminated the contract with Alliance Health.

6. The Management Agreement contained an indemnification clause under which the Hospital was required to indemnify and hold Alliance Health harmless from and against any and all liability, including attorneys' fees, which may arise out of any negligent or intentional acts or omissions of the Hospital or any officer or employee of the Hospital.

7. The Management Agreement further made clear that Alliance Health would not, by entering into the Management Agreement, become liable for the debts and obligations of the Hospital.

8. The Hospital was the only entity that had authority to authorize payment to Droze and Reyna and had repeatedly done so since their date of hire.

9. On December 11, 2018, the Hospital informed Alliance Health that it was terminating the Management Agreement. Thereafter, the Hospital refused to authorize additional payroll payments to Droze and Reyna, who, until then, had all payments authorized and checks signed by the Hospital. The Hospital also refused to honor other terms of the Employment Agreements entered into between the Hospital and Droze and Reyna, respectively.

10. Pursuant to Section 15(C) of the Management Agreement, the indemnification provisions survived the termination of the Agreement.

11. The Hospital's failure to pay Droze and Reyna any and all wages due constitutes a negligent or intentional act or omission for and has caused damage to Alliance Health in an amount according to proof.

12. Because Alliance Health is in no way responsible for the harm alleged by Plaintiffs, the Hospital is therefore also liable for equitable indemnity to Alliance Health for any and all damages caused to Alliance Health by the Hospital's failure to pay Plaintiffs Droze and Reyna any and all wages due.

13. Quartz Mountain entered into a relationship with the Hospital in or around July 2017 under which Quartz Mountain allowed the Hospital to use an existing bank account that it had open for purposes of the Hospital's payroll.

14. From the time the Hospital began using the account, Quartz Mountain did not have control of the account. Only the City of Mangum had access to the funds placed in the Quartz Mountain account. All checks were signed by City employees or the Hospital's long-time HR person, Kaye Hamilton.

15. Quartz Mountain's only involvement with Plaintiffs was to allow the Hospital to use its account for payroll purposes. Quartz Mountain had no involvement directly with Plaintiffs, had no control over the Plaintiffs'

     employment relationship, and had no control over the funds used to pay Plaintiffs. As such, Quartz Mountain was in no way responsible for any harm caused to Plaintiffs.

16. Because Quartz Mountain is in no way responsible for the harm alleged by Plaintiffs, and its involvement in the matter is due solely to its having allowed the Hospital to use its account for purposes of Hospital payroll, the Hospital is therefore liable for indemnity to Quartz Mountain for any and all damages caused to Quartz Mountain by the Hospital's failure to pay Plaintiffs Droze and Reyna any and all wages due.

   **C.**    **Defendant Mangum Regional Medical Center**:

1. Mangum denies that it was the employer of either of the Plaintiffs herein.

2. Mangum denies that it terminated Plaintiffs' employment.

3. Mangum, on or about July 25, 2017, entered into a Management Service Agreement with Alliance, whereby Alliance was to manage the hospital.

4. The Management Agreement provided that Alliance would, in its sole discretion, and at its sole expense, select executive personnel and would be exclusively responsible for their compensation, control the terms and conditions of their engagement or employment, and be the direct employees, agents, or independent contractors of Alliance and not the employees of Mangum.

5. That the agreement, by its definitional terms, would include the Plaintiffs herein.

6. That the agreement further provides that the management company shall defend, indemnify, and hold Mangum herein harmless with respect to the claim asserted by the Plaintiffs herein.

7. Defendant Mangum seeks indemnification against both of the Co-Defendants.

**5.**    **APPLICABILITY OF FED. R. CIV. P. 5.1 AND COMPLIANCE.**

Do any of the claims or defenses draw into question the constitutionality of a federal or state statute where notice is required under 28 U.S.C. § 2403 or Fed. R. Civ. P. 5.1?
        ☐ Yes     ■ No

**6.**    **MOTIONS PENDING AND/OR ANTICIPATED** (include date of filing, relief requested, and date responsive brief to be filed).

**Plaintiff**: Plaintiff anticipates filing a protective order and a motion for partial summary judgment, if warranted by the facts.

**Defendants:**  Mangum anticipates filing motions for summary judgment, or for partial summary judgment, in this matter.

7. **COMPLIANCE WITH RULE 26(a)(1).**  Have the initial disclosures required by Fed. R. Civ. P. 26(a)(1) been made?   ☐ Yes        ■ No
If "no," by what date will they be made? September 18, 2019

8. **PLAN FOR DISCOVERY.**

    A.   The discovery planning conference (Fed. R. Civ. P. 26(f)) was held on August 29, 2019.

    B.   The parties anticipate that discovery should be completed within <u>nine</u> months.

    C.   In the event ADR is ordered or agreed to, what is the minimum amount of time necessary to complete necessary discovery prior to the ADR session? Eight months

    D.   Have the parties discussed issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced, pursuant to Fed. R. Civ. P. 26(f)(3)(c)?

        ■ Yes        ☐ No

        The parties agree that ESI should be preserved in its native format, but need not be produced in its native format unless the opposing party so requests. All such requests shall be governed by the Federal Rules of Civil Procedure, as well as any applicable Court rules, practice standard, or orders.  Unless production in native format is requested, the parties will exchange ESI in PDF or Tiff format, whichever is specified.  The parties agree that a party does not waive their right to seek in native format documents previously produced in another format and that prior production in one format shall not be a basis to object to a request that information be produced in native format.

    E.   Have the parties discussed issues relating to claims of privilege or of protection as trial-preparation material pursuant to Fed. R. Civ. P. 26(f)(3)(D)?

        ■ Yes        ☐ No

To the extent the parties have made any agreements pursuant to Fed. R. Civ. P. 26(f)(3)(D) and Fed. R. Civ. P. 502(e) regarding a procedure to assert claims of privilege/protection after production and are requesting that the court include such agreement in an order, please set forth the agreement in detail below and submit a proposed order adopting the same.

F. Identify any other discovery issues which should be addressed at the scheduling conference, including any subjects of discovery, limitations on discovery, protective orders needed, or other elements (Fed. R. Civ. P. 26(f)) which should be included in a particularized discovery plan.

9. **ESTIMATED TRIAL TIME:** 5 days

10. **BIFURCATION REQUESTED:**   □ Yes   ■ No

11. **POSSIBILITY OF SETTLEMENT:**   □ Good   ■ Fair   □ Poor

12. **SETTLEMENT AND ADR PROCEDURES:**

   A. Compliance with LCvR 16.1(a)(1) - ADR discussion:   ■ Yes   □ No

   B. The parties request that this case be referred to the following ADR process:

   ■ Court-Ordered Mediation subject to LCvR 16.3
   □ Judicial Settlement Conference
   □ Other _____
   □ None - the parties do not request ADR at this time.

13. Parties consent to trial by Magistrate Judge? □ Yes   ■ No

14. Type of Scheduling Order Requested. ■ Standard - □ Specialized (If a specialized scheduling order is requested, counsel should include a statement of reasons and proposal.

**RESPECTFULLY SUBMITTED THIS 5th DAY OF SEPTEMBER, 2019.**

                s/ Amber L. Hurst
                Mark Hammons, OBA #3784
                Amber L. Hurst, OBA # 21231
                Hammons, Gowens, Hurst & Associates
                325 Dean A. McGee Avenue
                Oklahoma City, Oklahoma 73102
                Telephone: (405) 235-6100
                Facsimile: (405) 235-6111
                Email: amber@hammonslaw.com
                *Attorneys for Plaintiff*

        s/Rodney C. Ramsey
        Rodney C. Ramsey, OBA #10450
        Ramsey and Gray, P.C.
        101 N. Robinson Avenue, Suite 725
        Oklahoma City, OK 73102
        (405) 239-2393
        rramsey@ramseygraypc.com
        *Attorney for Defendant Mangum Regional Medical Center*


        s/Mary P. Snyder
        Adam W. Childers, OBA #18673
        Mary P. Snyder, OBA #31427
        CROWE & DUNLEVY
        A Professional Corporation
        Braniff Building
        324 N. Robinson Ave., Suite 100
        Oklahoma City, OK 73102-8273
        (405) 235-7700
        (405) 239-6651 (Facsimile)
        adam.childers@crowedunlevy.com
        mary.snyder@crowedunlevy.com
        *Attorneys for Defendants Alliance Health Southwest Oklahoma, LLC and Quartz Mountain Investments, LLC*